**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| CEDRIC DUPREE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CIVIL NO. 08-618-GPM |
| ) | |
| MAJOR TOM MAUE, *et al.*, ) | |
| ) | |
| Defendants. ) | |

# MEMORANDUM AND ORDER

**MURPHY, District Judge:**

On September 2, 2008, Plaintiff, an inmate confined at the Pontiac Correctional Center, filed this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff's second amended complaint, filed by appointed counsel, uses the designations of claims set forth on threshold review conducted pursuant to 28 U.S.C. § 1915A. These claims are summarized below.

> Count 1 (First Amendment retaliation): Plaintiff claims that he successfully brought a § 1983 action against staff at Pontiac Correctional Center (PCC) and that Defendants in this case, who are prison staff members at Menard Correctional Center (MCC) and Southwestern Illinois Correctional Center (SWICC), took retaliatory actions against him as described in Counts 3, 4, 5, 12, 13, 14, and 15 because of Plaintiff's previous and current litigation activities.
>
> Count 3 (Eighth Amendment excessive force): On or about September 19, 2006, Defendant Joshua Fritz slapped Plaintiff in the face and stomped on his toes.
>
> Count 4 (Eighth Amendment medical needs): On or about September 19, 2006, Defendant John Mohr, who it appears was a prison nurse, failed to provide Plaintiff adequate care for his panic attack and wrist cutting and further instructed Plaintiff how to cut deeper and slice his wrists.
>
> Count 5 (Due Process, Eighth Amendment medical needs, Eighth Amendment conditions of confinement, First Amendment religious rights): Between September 13, 2006, and October 5, 2006, Defendants Mirza Baig, who was a prison doctor, and

> Joe Harper placed Plaintiff on suicide watch and forcibly injected Plaintiff with "psychotropic medication" against his will and in violation of his religious beliefs (due process and religious rights); during this time, Defendants Baig and Harper refused to restrain Plaintiff, allowing him to cut himself and eat his own feces (medical needs); Defendant Fritz stripped Plaintiff naked, and while on suicide watch, Plaintiff was placed in a room that was "about" 42 degrees (cell conditions).
>
> Count 12 (religious rights under the First Amendment and Religious Land Use and Institutionalized Persons Act (RLUIPA)): While Plaintiff was confined at SWICC, Defendant Don Sanford ordered Defendant David Kappler to impinge Plaintiff's religious activities; Defendant Kappler issued Plaintiff a disciplinary ticket for praying, singing, and witnessing (i.e., telling others about Jesus); Defendant Biggerstaff issued Plaintiff a disciplinary ticket for possessing a Bible; Defendants Karen Barber and Heather Grote-Johnson instructed Plaintiff not to mention the name of God or Jesus.
>
> Count 13 (Eighth Amendment excessive force): On October 3 and 4, 2006, Defendant Brian Thomas "maliciously and sadistically" twisted and pulled down on Plaintiff's handcuffs, causing cuts, bruises, extreme pain, and possible permanent scarring on Plaintiff's wrists.
>
> Count 14 (Eighth Amendment excessive force): On May 6, 2008, Defendants David Holder, George Holton, and Michael Schnicker handcuffed Plaintiff in his cell and beat him, ordered him to drop his lawsuits, and threatened further beating if he didn't do so; these Defendants beat Plaintiff's head against the wall "and tore his toenails out of his feet and left him in his cell bleeding."
>
> Count 15 (Eighth Amendment medical needs): After beating Plaintiff on May 6, 2008, Defendants Holder, Holton, and Schnicker "left Plaintiff laying in his cell bleeding and unconscious without giving him or offering him any medical attention;" Plaintiff attended a federal court hearing with his feet and toes still bleeding and no medical treatment.

(*See* Doc. 145). Several housekeeping matters are in order. First, Plaintiff names Major Tom Maue and Rachel Vasquez in the caption of his Second Amended Complaint but asserts no claims against them. Defendants Maue and Vasquez are dismissed and terminated on the Court's docket. Next, this Court previously dismissed with prejudice Plaintiff's RLUIPA claim (*see* Doc. 70). Accordingly, only Plaintiff's First Amendment claim remains in Count 12. Defendants' motion to dismiss on these bases (Doc. 139), which the Court construes as a motion to clarify, is **GRANTED**;

the record shall so reflect.

Defendants Sanford and Kappler move for summary judgment on Count 12 because the First Amendment claim is barred by the statute of limitations and by res judicata. Plaintiff has not been confined at SWICC since 1999. He filed a lawsuit against Defendants Sanford, Kappler, Biggerstaff, Barber, Grote-Johnson, and others in 2002. *See Dupree v. Laster*, Case No. 02-cv-1059-DRH (S.D. Ill. filed Oct. 7, 2002). In that case, now-Chief District Judge David R. Herndon found that Plaintiff's First Amendment and RLUIPA claims against these defendants were barred by the statute of limitations. There is no question that Plaintiff's First Amendment claim asserted in Count 12 in the present case likewise is barred by the statute of limitations; accordingly, Count 12 is **DISMISSED with prejudice** in its entirety.[1] This ruling applies to Defendants Sanford and Kappler, who filed the motion; Defendants Biggerstaff and Grote-Johnson, who have not been served in this action; and Defendant Barber, who has not answered or otherwise appeared in the action.

Because Plaintiff's retaliation claim against Defendants Sanford, Kappler, Biggerstaff, Grote-Johnson, and Barber is based upon conduct that is barred by the statute of limitations, the retaliation claim asserted in Count 1 similarly fails as against these Defendants. Counts 1 and 12 are the only claims asserted against these Defendants, and summary judgment hereby is granted in favor of these Defendants on both claims. Consequently, Defendants Sanford, Kappler, Biggerstaff, Grote-Johnson, and Barber are **DISMISSED with prejudice** from this action. The Report and Recommendation submitted by United States Magistrate Judge Philip M. Frazier recommending that Defendants Biggerstaff and Grote-Johnson be dismissed without prejudice for Plaintiff's failure to

---

[1]Plaintiff's RLUIPA claim asserted in Count 12 already has been dismissed with prejudice (*see* Doc. 70).

effectuate service (Doc. 150) is **REJECTED as moot**.  Moreover, the default entered against Defendant Barber on November 22, 2010 (Doc. 155) is **VACATED**.  This Court will not enter a default on such egregiously untimely claims.  Consequently, Plaintiff's motion for default judgment against Defendant Barber (Doc. 156) is **DENIED**.

Defendants Thomas, Harper, Mohr, Fritz, and Baig seek summary judgment on Count 1 because Plaintiff admitted in his deposition that he has no evidence that these Defendants knew about Plaintiff's previous litigation activities; therefore, Plaintiff cannot prove that his protected speech prompted the alleged misconduct. *See generally Fairley v. Andrews*, 578 F.3d 518 (7th Cir. 2009) (a plaintiff must show that his protected speech caused the complained of conduct).  Plaintiff was deposed on March 12, 2010.  The deposition transcript was submitted in its entirety by Defendant Baig (*see* Doc. 157-5), and the following testimony was elicited as to each of these Defendants.

> Defendant Fritz:  Plaintiff does not have any evidence that Defendant Fritz knew about Plaintiff's previous lawsuits (Tr. at 40:17 through 41:1).
>
> Defendant Mohr:  Plaintiff does not have any evidence that Defendant Mohr knew about Plaintiff's previous lawsuits (Tr. at 43:16-23).
>
> Defendant Harper:  Plaintiff does not have any evidence that Defendant Harper knew about Plaintiff's previous lawsuits (Tr. at 48:16 through 49:2).
>
> Defendant Thomas:  Plaintiff does not have any evidence that Defendant Thomas knew about Plaintiff's previous lawsuits (Tr. at 53:23 through 54:14), *except* for Plaintiff's testimony that when Defendant Thomas came into his cell as alleged in Count 13, Defendant Thomas told Plaintiff "don't you think it's time you drop your lawsuits?" (Tr. at 131:23 through 132:17).
>
> Defendant Baig:  Plaintiff does not have any factual information that Defendant Baig retaliated against Plaintiff because Plaintiff filed the other lawsuits (Tr. at 102:7-23). Plaintiff seems to infer such retaliation from the fact that Defendant Baig was named in earlier lawsuits; therefore, he must have known about them (*see* Tr. at 104:7 through 105:21).

Plaintiff has not submitted any evidence that Defendants Fritz, Mohr, and Harper retaliated against him because of his prior or current lawsuits. The affidavit submitted by Plaintiff's counsel, stating that when he visited Plaintiff at PCC, several of the correctional officers commented that Plaintiff is a trouble maker who harasses prison officials with lawsuits, does not defeat these Defendants' motion. Attorney Freese does not identify who made such statements or how such statements relate to the claims alleged against the defendants named in this case (*see* Doc. 123-5). The retaliation claim asserted in Count 1 is **DISMISSED** as to Defendants Fritz, Mohr, and Harper. Plaintiff's testimony regarding Defendant Thomas's statements about Plaintiff's lawsuits is sufficient to survive summary judgment on Count 1 as to Defendant Thomas. Although Defendant Baig may have been aware of previous litigation because he was named and served in another case, his affidavit simply states that he was not aware of any litigation against staff at PCC. Count 1 encompasses the earlier litigation against PCC staff as well as current litigation. Defendant Baig is not entitled to summary judgment on Count 1 on this basis. He has moved for summary judgment on Count 5, however, and if he is entitled to judgment on that claim, then Plaintiff's retaliation claim against him in Count 1 necessarily fails.

Defendant Baig seeks summary judgment on Count 5 in its entirety. He concedes that as the prison psychiatrist at MCC, he authorized the involuntarily administration of psychotropic medication to Plaintiff and argues that he did so justifiably and in accordance with the protocols set forth in the Illinois Administrative Code. He submits Plaintiff's medical records to show that he was not deliberately indifferent to Plaintiff's medical needs, did not violate Plaintiff's religious rights, did not violate Plaintiff's due process rights, and did not in any way participate in any inhumane conditions of confinement. Having reviewed Plaintiff's deposition testimony and the medical

records submitted by Defendant Baig and by Plaintiff in response to the motion, the Court finds that the claims asserted in Count 5 must be dismissed in their entirety as to all Defendants named therein. The Court takes this extraordinary measure, despite the fact that Defendants Fritz and Harper have not moved for summary judgment on Count 5, because there is no dispute of any material fact that Plaintiff cannot recover on these claims.

Plaintiff was placed on suicide watch on September 13, 2006, upon his arrival to MCC, by Defendant Harper, who is a licensed clinical social worker at MCC, because Plaintiff was cutting his wrists while in route from Logan Correctional Center. On September 19, 2006, Defendant Harper recommended discontinuation of suicide watch and discharge to the physician. That day, Plaintiff was released from suicide watch and discharged from the infirmary by Dr. Feinerman, who is not named as a defendant in this case. Defendant Baig placed Plaintiff back on suicide watch four days later, on September 23rd. Defendant Baig authorized emergency involuntary administration of psychotropic medication on September 28th; at that time, Defendant Harper explained to Plaintiff the administration of such medication.

The Court starts its analysis with Plaintiff's cell conditions claim – specifically, that it was cold. It is clear from the medical records that at all times, Plaintiff was offered clothes, a smock, and/or a suicide blanket. Plaintiff preferred to expose himself, either by wearing nothing or by wearing the smock open in the front, so that he could masturbate any time a female correctional officer walked by him. On at least one occasion, he flushed his jumpsuit down the toilet, causing the water to be shut off by security. Plaintiff offers nothing to support his contention that his cell was 42 degrees. Although Plaintiff complained on September 29, 2006, that he was "cold to the bone," the nurse noted that Plaintiff dropped his blanket whenever a female staff member was

present. When he complained again a few days later, the records show that the inside temperature was 73 degrees and the outside temperature was 70 degrees. Plaintiff's cell conditions claim is **dismissed with prejudice**. Plaintiff's related claim against Defendant Fritz for "[stripping him] naked" is likewise dismissed with prejudice, as the record is replete with evidence that Plaintiff was offered covering but, in most instances, declined to use it.

Next, the Court turns to Plaintiff's claim that Defendants Baig and Harper were deliberately indifferent to Plaintiff's serious medical needs by failing to provide proper medical and psychiatric treatment, including restraints, to prevent him from harming himself. There are many notations in the medical records that Plaintiff was anxious. Defendant Baig attests that "the use of physical restraints, in many cases such as plaintiff's, can exacerbate the patient's anxiety and potentially lead to even more self-destructive behavior" (Doc. 157-1 at ¶ 20). The records also show that when Plaintiff attempted to cut – or scratch – his wrists, he was treated with betadine and bandages. Plaintiff was given psychiatric medication, which he frequently requested; he also requested a specific medication, buspar, but was not given it. Finally, Plaintiff's attempts to cut himself and eat his own feces were significant factors in Defendant Baig's decision to authorize involuntary administration of psychotropic medication (*see id*. at ¶ 17), which Plaintiff also challenges. Mere negligence (which the Court does not find), is insufficient to violate the Eighth Amendment. *Peate v. McCann,* 294 F.3d 879, 882 (7th Cir. 2002). Similarly, the failure to provide an inmate his chosen treatment or medicine does not violate the Eighth Amendment. *See Snipes v. DeTella,* 95 F.3d 586, 591 (7th Cir. 1996). Plaintiff's medical needs claims alleged in Count 5 are **dismissed with prejudice**.

Plaintiff alleges that his due process and religious rights were violated when Defendants Baig

and Harper involuntarily injected Plaintiff with psychotropic medication. The due process claim warrants little discussion. Plaintiff has failed to show any deficiency in the procedure followed by Defendants Baig and Harper, as documented in Exhibit 2 attached to Defendant Baig's motion (Doc. 157-4). This claim is **dismissed with prejudice**.[2]

Plaintiff claims that the injection violated his religious rights. Plaintiff explained his religious beliefs during his deposition (Doc. 157-5). Basically, he believes that faith should be strong enough to heal so that medication is not necessary; but if his faith is not strong enough at a particular time, then medication is needed (*see generally* Tr. 142:9 through 144:6). During his deposition, Plaintiff did not distinguish between injection medication and pills. Throughout his medical records, Plaintiff requests that the nurses give him his medicine. On October 3, 2006, Plaintiff stated that he didn't want to takes his medications but that he wanted a shot (Doc. 157-3 at p. 41). The evidence does not square with Plaintiff's claim that his religious rights were violated. Plaintiff's theory requires that he be the one to evaluate the strength of his faith to determine, day by day, whether medication may or may not be necessary. Neither the First nor Eighth Amendment requires such a concession by prison staff. Plaintiff's claim that his religious rights were violated when he was administered medication involuntarily is **dismissed with prejudice**.

Because the Court enters summary judgment on Count 5 in favor of Defendants Baig, Harper, and Fritz, Plaintiff's retaliation claim asserted in Count 1 also must fail.[3] Defendants Baig

---

[2]Any claim that Plaintiff should not have been placed on suicide watch warrants even less discussion, as the medical records reflect Plaintiff's repeated statements that he wanted to harm himself and others.

[3]The Court already dismissed Count 1 against Defendants Harper and Fritz because Plaintiff has not shown that they retaliated against him because of his litigation activities. The Court offers this analysis as an alternative basis for dismissing Count 1 as to these Defendants.

and Harper are named in Counts 1 and 5 only; therefore, they are **DISMISSED with prejudice** from this action.

In summary, for the foregoing reasons, the motion for partial summary judgment filed by Defendants Fritz, Harper, Mohr, Kappler, Sanford, and Thomas (Doc. 110) is **GRANTED in part and DENIED in part**. The motion to dismiss, construed by the Court as a motion for clarification, filed by Defendants Kappler, Maue, Sanford, and Vasquez (Doc. 139) is **GRANTED**. The Report and Recommendation of Magistrate Judge Frazier (Doc. 150) is **REJECTED as moot**. The default entered against Defendant Barber is **VACATED**, and Plaintiff's motion for default judgment (Doc. 156) is **DENIED**. The motion for summary judgment filed by Defendant Baig (Doc. 157) is **GRANTED**. The claims asserted in Counts 5 and 12 are **DISMISSED with prejudice**. Defendants Maue, Vasquez, Sanford, Kappler, Baig, Harper, Biggerstaff, Grote-Johnson, and Barber are **DISMISSED with prejudice**. The retaliation claim asserted in Count 1 remains pending only against Defendants Thomas, Holder, Holton, and Schnicker. The excessive force claim asserted in Count 3 remains pending against Defendant Fritz. The medical needs claim asserted in Count 4 remains pending against Defendant Mohr. The excessive force claim asserted in Count 13 remains pending against Defendant Thomas. The excessive force and medical needs claims asserted in Counts 14 and 15, respectively, remain pending against Defendants Holder, Holton, and Schnicker. A final pretrial conference and jury trial on these remaining claims will be set by separate notice.

**IT IS SO ORDERED.**

DATED: 03/18/11

s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Judge